UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MIDDLESEX MUTUAL ASSURANCE COMPANY,<br><br>    Plaintiff/<br>    Counterclaim Defendant,<br>v.<br><br>DOROTHY M. FISH,<br><br>    Defendant/<br>    Counterclaim Plaintiff | No. 09-CV-375-B-W |

**RECOMMENDED DECISION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

Middlesex Mutual Assurance Company, as Plaintiff and Counterclaim Defendant, and Dorothy M. Fish, as Defendant and Counterclaim Plaintiff, request that the Court resolve their insurance coverage dispute in the context of cross-motions for summary judgment. The Court referred the contest for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons that follow, I recommend that the Court grant Middlesex Mutual's motion and deny Mrs. Fish's motion.

UNDISPUTED FACTS

The following factual statement is drawn from the parties' competing statements of material facts, filed in accordance with Local Rule 56, and from the record cited in support of those statements. The statements are predominantly undisputed, with only minor qualifications.

Plaintiff/Counterclaim Defendant Middlesex Mutual Assurance Company is a corporation organized under the laws of the State of Connecticut with a principal place of business there. Defendant/Counterclaim Plaintiff Dorothy Fish is a resident of the City of

Leominster, in the Commonwealth of Massachusetts.  On or about the evening of January 19, 2006, Mrs. Fish was operating a motor vehicle in a generally northerly direction on Main Street, also known as Route 17, in the Town of Readfield.  At that time and place, Robert E. Clark (not a party to this suit) was operating a motor vehicle he personally owned, which he had positioned across, and which was blocking, the northbound lane of travel on Main Street.  A collision ensued and Mrs. Fish sustained severe injuries, eventually valued by the Maine Superior Court at $1,448,691.21.  (Fish Statement of Material Facts ¶¶ 1-4, 9, 23-24, Doc. No. 12.)

Robert Clark is the president of Clark's Custom Cabinetry, Inc., a Maine business corporation.  The business makes kitchen cabinets in its shop on the premises of property in which Clark and his wife jointly hold title.  In his position as president, Mr. Clark has historically handled the bidding and invoicing of jobs, accounts receivable and payable, including paying any contractors or extra help, the coordination of preparation and filing of tax returns and other corporation documents, and securing any necessary permits, bonds and insurance.  At the time of the accident, Mr. Clark was not performing any of these executive officer activities.  (Id. ¶¶ 5-8; see also Middlesex Statement of Additional Facts ¶ 1, Doc. No. 16.)  Rather, he was operating the pickup truck in the course and scope of his employment by Clark's Custom Cabinetry and in the service of Clark's Custom Cabinetry.  (Middlesex Statement of Undisputed Material Facts ¶ 13, Doc. No. 18.)

At the time of the accident, Clark was returning to the shop of Clark's Custom Cabinetry, transporting a person he was working with and materials from a job site.  Clark was driving and was preparing to back his truck and trailer onto the property so that he could unload tools used on the job that day from the trailer to the cabinetry shop, which is housed in its own building on the Clark premises.  (Fish Statement ¶ 5;  Middlesex Additional Statement ¶ 4.)  Clark's Custom

Cabinetry did not own the truck, the trailer, or the premises.  (Middlesex Additional Statement ¶¶ 3, 7;  Middlesex Statement of Undisputed Material Facts ¶ 14.)  Mr. Clark was operating the truck at the time of the accident.  (Middlesex Additional Statement ¶ 6.)  He was beginning to back up the truck and trailer when the collision occurred.  (Middlesex Statement of Undisputed Material Facts ¶ 11 (admitted).)

At the time of the accident, Clark's Custom Cabinetry, Inc., was insured by Middlesex Mutual Assurance Company under a commercial general liability (CGL) policy providing general liability coverage.  (Fish Statement ¶ 10;  Middlesex Additional Statement ¶ 11.)  The material portions of the Policy are described or excerpted in the following paragraphs.

The "Named Insured" is Clark's Custom Cabinetry.  ("Middlesex Commercial Lines Policy" at 1, Doc. No. 16-51.)  The Policy lists Clark's Custom Cabinetry's "Form of Business" as "Corporation" and provides coverage limits of $1,000,000 for each occurrence.  (Id. at 2.)  The Policy's CGL Coverage Form commences with the following introduction:

> Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.  Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II—Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section V—Definitions.

(Id. at 5.)  The parties agree that the definition supplied for "insured" is material to the parties' dispute.  That definition reads:

3

> **SECTION II—WHO IS AN INSURED**
>
> 1. If you are designated in the Declarations as: . . . .
>
>    d. An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stock-holders are also insureds, but only with respect to their liability as stockholders.
>    . . . .
>
> 2. Each of the following is also an insured:
>
>    a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . . .

(<u>Id.</u> at 13.)  Among the coverage provided by the Policy is the following:

> **SECTION I—COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . .

(<u>Id.</u> at 5.)  This coverage is subject to the following exclusion:

> 2. **Exclusions**
>
>    This insurance does not apply to: . . . .
>
>    g. **Aircraft, Auto or Watercraft**
>
>       "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.
>
> This exclusion does not apply to:
> . . . .
> (3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;
> . . .

(Id. at 8.) (See also Fish Statement ¶¶ 11-16; Middlesex Mutual Opposing Statement ¶¶ 11-16, Doc. No. 16.)

Beyond the coverage question, Mrs. Fish offers a series of undisputed statements that address elements of her reach and apply counterclaim under 24-A M.R.S. § 2904. The facts are undisputed that:

> 1. Mrs. Fish brought an action for negligence against Clark in the Maine Superior Court in March 2007 and amended the complaint to add Clark's Custom Cabinetry, Inc., as a defendant in November 2007.
>
> 2. Middlesex was timely notified of the suit.
>
> 3. Clark's Custom Cabinetry, Inc., and Clark entered into an agreement to stipulate to the entry of judgment in favor of Dorothy Fish in an amount to be determined by the court, in return for an Assignment of Rights and Covenant not to Execute personally against either Clark or the assets of Clark's Custom Cabinetry, Inc.
>
> 4. Pursuant to the stipulation, a trial on damages was scheduled and Middlesex was timely notified of the time and place of trial.
>
> 5. The Superior Court received evidence on damages and entered judgment in Mrs. Fish's favor against Clark and Clark's Custom Cabinetry in the amount of $1,448,691.21 plus interests and costs.

>   6. Despite ample and timely notice of the accident and all stages of the proceedings in Superior Court before the recovery of the judgment against its insured, Clark's Custom Cabinetry, Inc., Middlesex declined to enter, defend or intervene in the action on behalf of its insured.

(Fish Statement of Material Facts ¶¶ 17-25.)

## DISCUSSION

A party moving for summary judgment is entitled to judgment in its favor only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. Merch. Ins. Co. v. U. S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied. ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

In this case, both parties seek summary judgment on undisputed facts concerning a question of law: how to construe the language of the Middlesex Commercial Lines Policy with respect to CGL coverage. The parties agree that this question is governed by Maine law and that it is the only issue that stands in the way of an award of judgment to either party. With respect to the requirements of Maine's reach and apply statute, Middlesex Mutual admits that there are no material disputes and "that the Court need decide only the issue . . . : was there coverage under the Middlesex policy in the circumstances of this case?" (Middlesex Mem. in Opposition at 3, Doc. No. 15.) Thus, resolution of the coverage question will result either in judgment for

Plaintiff/Counterclaim Defendant Middlesex Mutual on its claim for declaratory relief that no coverage is available or in judgment for Defendant/Counterclaim Plaintiff Fish on her counterclaim to reach and apply insurance proceeds pursuant to 24-A M.R.S.A. § 2904.  I therefore proceed to that question, after reciting the standards that govern insurance policy construction disputes.

"In Maine, courts first examine relevant policy language to determine whether it is unambiguous; if so, it is enforced as written."  W. World Ins. Co. v. Am. and Foreign Ins. Co., 180 F. Supp. 2d 224, 230 (D. Me. 2002).  Language of an insurance contract is ambiguous only if it is reasonably susceptible to more than one plausible interpretation when measured "from the perspective of an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured."  Peerless Ins. Co. v. Wood, 685 A.2d 1173, 1174 (Me. 1996).  As with other contracts, language should ordinarily be understood to conform with the intention of the parties, which is revealed by an evaluation of the whole instrument.  Peerless Ins. Co. v. Brennon, 564 A.2d 383, 385 (Me. 1989).  The meaning of terms in an insurance contract and whether they are ambiguous is to be determined by the court as a matter of law.  Foremost Ins. Co. v. Levesque, 2005 ME 34, ¶ 7, 868 A.2d 244, 246.

**A.    Whether Mr. Clark was "an insured" under the Policy in the circumstances**

The thrust of Mrs. Fish's argument is that Mr. Clark was not himself "an insured" while he was performing non-executive functions for Clark's Custom Cabinetry and that, consequently, his personal operation of the truck does not trigger the auto exclusion. (Fish Mot. for Summary J. at 11-15.)  Alternatively, she argues that the exclusion does not apply because of the auto exclusion's "parking exception."  (Id. at 14.)  Middlesex Mutual's argument, on the other hand, is

7

that any reasonable insured in Mr. Clark's position would be "incredulous" of a construction that would deny him insured status with respect to CGL coverage but extend it to someone that he hired. (Middlesex Mem. in Opposition at 11, Doc. No. 15.) It proposes that the more sensible construction of the Policy is to recognize that someone like Mr. Clark is both an executive officer and an employee, depending on the hat he is wearing when an occurrence takes place. (Id. at 12.)[1]

The language that lies at the heart of this coverage dispute is the Policy's description of "who is an insured," specifically the language of Section II.1.d and Section II.2.a. This portion of the Policy confers insured status on persons other than the named insured identified on the Policy's declarations page. To determine whether this language confers insured status on Mr. Clark when he performs non-executive functions for the named insured, it must be read from Mr. Clark's perspective.[2] I conclude that a reasonable person of ordinary intelligence in Mr. Clark's position would believe that the language creates a serious ambiguity that, on one reading, would essentially frustrate the primary purpose for which someone in Mr. Clark's position would secure CGL coverage for a business he runs in the corporate form, which is to insure the business and oneself against liabilities arising from the conduct of the business (here, making and installing cabinets). Where the company president performs the day to day work of the business (indeed, is the business but for operation of a legal fiction), it is a natural assumption of the insurance

---

[1] Middlesex Mutual explains that there is an "interlocking and mutually exclusive" relationship between CGL policies and automobile policies so that an occurrence that clearly falls within the scope of automobile liability coverage would be outside the scope of a CGL policy with an auto exclusion. (Pl.'s Mem. in Opposition at 7-9.) Middlesex goes so far as to argue that this principle "even overrides the normal canons of insurance policy interpretation." (Id. at 9 n.2.) The answers to this are that there is no Maine precedent to that effect and that an insured of ordinary intelligence is only going to appreciate this principle if the language of the CGL policy is sufficient to convey that meaning upon a more than casual reading.

[2] Mrs. Fish agrees with this, although she argues that Mr. Clark would prefer an overall construction of the policy that makes insurance proceeds available for this occurrence. (Fish Reply at 11-13, Doc. No. 24.)

relationship that he will be covered as an insured in that capacity. Consequently, it is an eminently reasonable construction of the policy to recognize that Mr. Clark is "an employee" when he performs work in the capacity of an employee, but not when he performs the functions of an executive officer.

To be sure, the language of Section II.1.d and Section II.2.a is poorly drafted when it comes to a closely held corporation through which a family business is run. But the fact that the construction advocated by Mrs. Fish opposes what one would expect to be the intention of the contracting parties does not conclusively demonstrate her proposed reading must be enforced as a matter of law. Rather, it suggests an inherent ambiguity and that ambiguity gives rise to a question of fact for the fact finder. "When there is an ambiguity in a written contract, and the record does not completely eliminate the possibility of an issue of material fact concerning the intent of the parties, summary judgment is inappropriate." Tondreau v. Sherwin-Williams Co., 638 A.2d 728, 730 (Me. 1994). The parties have developed a summary judgment record that tells the Court, in undisputed terms, what Mr. Clark was doing at the time of the accident and that he was a corporate officer who also participated in the day-to-day operation of the business of making and installing cabinets. However, they have not provided a factual predicate to establish the basic understanding of the contracting parties. For example, the summary judgment record does not contain testimony from Mr. Clark to the effect that he understood himself to be covered for non-executive labor performed in the course of the business. Nor does the factual record contain a concession or admission from Middlesex Mutual that Mr. Clark would be an insured in a non-executive capacity, although its brief essentially concedes that he would be. The Court should deny summary judgment to either party on the issue of whether Mr. Clark was

an insured for purposes of this occurrence because there is an underlying fact question that is inadequately addressed.

**B.     The Auto Exclusion**

Middlesex Mutual argues that the automobile exclusion, exclusion (g), applies regardless of the outcome of the foregoing dispute over policy construction. (Middlesex Mem. in Opposition at 17-19.) Mrs. Fish argues, primarily, that the auto exclusion does not apply because Mr. Clark was not an insured. (Fish Reply at 16.) However, she also argues that the exclusion does not apply, regardless of the dispute over Mr. Clark's status as an insured, by operation of the parking exception in the exclusion. "Language granting or excluding coverage for automobile 'use' has been interpreted to grant or exclude coverage only for those accidents or injuries that an insured would reasonably have expected to be covered or excluded under the policy." Peerless, 685 A.2d at 1175. I conclude that Middlesex Mutual wins this point as a matter of law, given the state of the factual record.

The provision in question excludes liability coverage for:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

An exception to the exclusion applies when the occurrence involves:

> Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured[.]

There is no ambiguity in the language of the auto exclusion or the parking exception. Working backward, it is clear on the undisputed record that the parking exception does not apply. It is uncontested that the Clark vehicle was returning from a Clark Custom Cabinetry worksite

bearing tools and employees. As a matter of law the vehicle was loaned to Clark's Custom Cabinetry under these circumstances because it was being put in service to Clark's Custom Cabinetry and was being operated by an agent of the corporation. Because the exception requires that a vehicle being parked not be owned by, rented by, or loaned to Clark's Custom Cabinetry, it does not apply and cannot override the auto exclusion. As for the auto exclusion, the undisputed facts, again, demonstrate that the vehicle was in service to Clark's Custom Cabinetry, so there was necessarily "use" of a vehicle by an insured, namely Clark's Custom Cabinetry. A corporation can only act through its agents and Mr. Clark's operation of the vehicle, on this record, is equivalent to operation by Clark's Custom Cabinetry. Because the facts necessarily demonstrate operation on behalf of Clark's Custom Cabinetry, the auto exclusion applies. Consequently, insurance proceeds are not available as a matter of law.

## CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court GRANT Middlesex Mutual's motion for summary judgment (Doc. No. 17); DENY Mrs. Fish's motion for summary judgment (Doc. No. 13); and issue its final judgment accordingly.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

   Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

               /s/ Margaret J. Kravchuk
               U.S. Magistrate Judge

February 16, 2010